# IN THE UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF PUERTO RICO

### Affidavit in Support of Criminal Complaint

I, Steve Cazeau, a Special Agent with the Drug Enforcement Administration (DEA), being duly sworn, depose and state as follows:

1. I am a Special Agent (SA) of the DEA and as such, I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510 (7), that is, an officer of the United States who is empowered to conduct criminal investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section, 2516.

2. I have conducted and assisted in investigations into the unlawful possession, possession with the intent to distribute, distribution of controlled substances, importation of controlled substances, and the associated conspiracies in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), 846, 952, and 963. I have received detailed instructions and participated in various investigations concerning the unlawful importation and distribution of controlled substances, the laundering and concealment of drug proceeds, the illegal use of communication facilities by drug traffickers in furtherance of their criminal activities and conspiracies to engage in these activities. I have experience and training in conducting surveillance operations, analyzing telephone records, interviewing witnesses, executing arrest warrants, participating in physical surveillance and other investigative techniques. The investigations in which I have participated have resulted in the arrest and prosecution of individuals who have smuggled, received and distributed controlled substances, including marijuana and cocaine as well as the seizure of those illegal drugs and proceeds of the sale of those illegal drugs.

3. Because of my personal participation in this investigation, and because of information provided to me by other agents and officers, and my personal observations, I am familiar with the facts and circumstances of this investigation. My experience in investigating drug offenders, my education, my conversations with senior drug agents and chemists, and my specialized training formed a basis of the opinions and conclusions set forth below which I drew from the facts set forth herein.

4. The information contained in this affidavit is based on my personal knowledge and observations during the course of this investigation; on information conveyed to me by other law enforcement officials; and on my review of records, documents, and other physical evidence obtained during this investigation. This affidavit is not intended to include every fact observed by me or known by the government.

5. Based on my training and experience, my knowledge of this case and my discussions with other law enforcement officers, I am familiar with narcotic traffickers' and money launderers' methods, schemes, and operations, and know:

### Probable Cause

6. The Drug Enforcement Administration (DEA) is currently investigating a drug trafficking organization that owns multiple drug points in various municipalities of Southern Puerto Rico, to include the towns of Villalba and Juana Diaz in addition to shipping multi-kilogram shipments of cocaine to the mainland United States via the United States Postal Service.

7. On October 06, 2025, at approximately 10:40 a.m., the Puerto Rico Police Bureau (PRPB) Ponce Narcotics Unit received information from a PRPB confidential source that Jomar Javier CRUZ-Santiago (hereinafter CRUZ-Santiago) was going to be selling at the drug point of Building 1 in the Enudio Negron Public Housing Project (PHP) located in Villalba, Puerto

Rico.

8. At approximately 2:00 p.m., PRPB Agents arrived at the Enudio Negron PHP to begin surveillance to corroborate the information received that morning. As PRPB agents arrived to Building 1, they observed CRUZ-Santiago wearing a black shirt and wearing a grey cross-body bag over his chest area. PRPB agents observed an extended pistol magazine protruding from the grey cross-body bag on CRUZ-Santiago's chest. PRPB Agents exited their vehicles, proceeded to approach CRUZ-Santiago, identified themselves as police, to which CRUZ-Santiago absconded on foot. PRPB agents gave chase as CRUZ-Santiago ran into a brush area located directly behind Building 1 of the Enudio Negron PHP.

9. PRPB Agents pursued CRUZ-Santiago into the brush area. During the foot chase, PRPB agents observed CRUZ-Santiago throw away two black pistol magazines to his left side into the brush and continue running. PRPB agents then observed CRUZ-Santiago take off the cross-body bag with the protruding pistol magazine and throw it to his right side. PRPB agents then observed CRUZ-Santiago jump down a steep gorge, and maintained visual of him as he veered back towards the Enudio Negron PHP.

10. At this time, additional PRPB agents who had stayed within the boundary of the PHP observed CRUZ-Santiago from their position and began paralleling him as he was running back to the PHP, this time towards Building 2. PRPB agents continued to pursue CRUZ-Santiago and observed CRUZ-Santiago enter Apartment 29 of Building 2. The first PRPB agent to arrive at the still-open doorway requested consent from the residents of the apartment to enter, which was granted. Upon entry, PRPB agents located CRUZ-Santiago hiding in a closet inside the first room of Apartment 29 and arrested him without further incident. PRPB Agents recovered two black pistol magazines and the grey cross-body bag, which had been thrown by CRUZ-

Santiago.

11. During an inventory search of the grey cross-body bag, PRPB Agents found a black Glock 22 .40 caliber pistol bearing serial number ADN658 loaded with an extended magazine inside a plastic holster. PRPB Agents observed that the original backplate of the pistol had been replaced by a metal chip which, based on the Agents' experience, indicated that it had been modified for fully automatic fire capability. When compared with a regular Glock pistol, the backplate of the Glock 22 which CRUZ-Santiago had in his possession is a dark-brown metal piece. Regular Glock pistols which are unmodified do not have metal backplate and instead are made with black plastic backplates. Inside the cross-body bag there were an additional three black pistol magazines, each loaded with .40 caliber ammunition. In your Affiant's training and experience, CRUZ-Santiago had the weapon to protect himself and his profits as he sold drugs at the drug point.



12. Also, inside the cross-body bag, Agents found three pharmacy-style pill bottles of varying sizes. Inside the largest pill bottle, Agents found 14 clear baggies of suspected cocaine. Based on my training and experience, the white powdery substance has the appearance of cocaine;

additionally, the fact that it was in the black bag thrown by the seller leads to believe that it is cocaine. Agents also found 30 pink aluminum decks of suspected heroin. PRPB Agents performed a preliminary field test on the pink decks of suspected heroin, which yielded positive for fentanyl. Inside the medium-size pill bottle, Agents found nine black transparent baggies containing suspected marijuana. It has the appearance of marijuana: green, leafy substance and is also packaged consistent with baggies of marijuana. Inside the smallest pill bottle, Agents found 20 black transparent baggies containing suspected crack cocaine. This has the appearance of small rock-like crack and is packaged consistent with crack cocaine ready for distribution. Additionally, Agents found a total of $621 U.S. Dollars inside the cross-body bag

THIS SPACE INTENTIONALLY LEFT BLANK

AFFIDAVIT CONTINUES ON FOLLOWING PAGE

which is also consistent with the sale of narcotics.



Steve Cazeau
Special Agent
Drug Enforcement Administration

Sworn and subscribed to me by phone at 11:37 a.m. in accordance with Rule 4.1 this 7th day of October 2025, in San Juan, Puerto Rico.

Hon. Giselle López-Soler
United States Magistrate Judge
District of Puerto Rico